BENJAMIN FRANKLIN JONES *v.* STATE OF MISSISSIPPI.

1. GAMBLING. *Keeping gambling table.* Code 1892, §1124. *Laws* 1896, p. 110. *Indictment. Separate counts. General verdict. Instructions.*

Where on a trial under an indictment containing three counts, each charging a felony, the jury are instructed for the state that a belief of certain facts is unnecessary to a conviction, a general verdict of guilty will be reversed if such belief be essential to a conviction under one of the counts.

2. SAME.

In such case, where a motion to require the prosecution to elect upon which count the state will proceed has been overruled, it is error to refuse defendant correct instructions, although they be appropriate to only one of the counts.

FROM the circuit court of Copiah county.

HON. ROBERT POWELL, Judge.

Jones, appellant, was defendant in the court below.    Section 1124 of the code of 1892, as amended by laws 1896, ch. 105, sec. 1, is as follows:

"If any person shall be guilty of keeping or exhibiting any game or gaming table commonly called A. B. C. or E. O. roulette or rowley-powley, or rouquet-noir, roredo, keno, monte, or any faro-bank, or other game, gaming table, or bank of the same or like kind, or any other kind or description, under any other name whatever, or shall be in any manner either directly or indirectly interested or concerned in any gaming tables, banks, or games, either by furnishing money or articles for the purpose of carrying on the same, being interested in the loss or gain of said table, bank, or games, or employed in any manner in conducting, carrying on or exhibiting said gaming tables, games or banks, every person so offending and being thereof convicted, shall be imprisoned not longer than five years in the state penitentiary."

The appellant, Jones, was indicted under this section. The indictment contains three counts. The first charges defendant with keeping and exhibiting a gaming table, commonly called a "poker table." The second charges him with being interested in the loss and gain of the gaming table commonly called a "poker table." The third count charges him with being employed in conducting a gaming table commonly called a "poker table," which was then and there exhibited, etc. On the trial defendant moved that the court require the district attorney to elect on which count of the indictment he would try the defendant. The motion was overruled, to which defendant excepted. The evidence showed that defendant engaged with others in playing games of poker in a room at his residence in Beauregard, on a small table that belonged to his wife, for money; the defendant taking part in the games. Some of the witnesses testified that defendant would take out chips from each jack-pot, and would take out at different times in the games. Others testified that he only took out to pay for the cards, and to pay for the wood used for fires. The opinion contains a further statement of the facts. Defendant was convicted and sentenced to the penitentiary, and he appealed to the supreme court.

*R. P. Willing, Jr.,* for appellant.

Surely the legislature did not intend to make it a crime, punishable by imprisonment in the penitentiary, for a man to play an ordinary game of poker for money simply because he happened to be the owner of the table on which the game was played.

It was held in *Wren* v. *State,* 70 Ala., 1, that the statute of that state which prohibits the keeping or exhibiting of a gambling table is not confined to tables on which banking games are played, such as faro, etc., but includes all tables for games of cards, such as draw-poker, and that a person who has the custody or possession of the table, the authority over the use

of it, and supervises the games on it, is the keeper of it. Under that decision it was necessary to show, before a person could be convicted of keeping and exhibiting a gambling table under the statute, that he had the custody or possession of the table, and authority over the use of it, and supervised the games played on it. While the evidence in this case showed that games of poker were played at defendant's house, on a table in his possession, yet the evidence fails to show that he had any more authority over the use of it than any other of the players who were engaged in the games which were played on it, and the evidence nowhere shows that he supervised the gambling on it while the games were being played. Even under this construction of the Alabama statute, the defendant would not be guilty of keeping a gambling table under the statute, which is probably broader in its terms than our statute, for a violation of which the defendant was indicted. The defendant was guilty of playing cards for money, for which he had previously been convicted. He was probably guilty of permitting gambling in his house, but not of the felony of which he was convicted.

The tables intended to be embraced in our statute are tables on which banking games are played, or tables on which games were played, where the keeper and exhibitor of the table either sustained some gain or loss from every game that is played on it. How can one man exhibit a game of poker? How can a person be interested in the gain or loss of a table on which a game of poker is played? If he participates in the games, he may become interested in the losses or gains of the games just as the other players would, but he would not be interested in the gain or loss of the table on which the games were played. While the code provides that the statute should be construed liberally, we trust that unless the facts of this case clearly show that the appellant is guilty under the statute, that he will not be consigned to the penitentiary by construction.

*W. L. Easterling,* assistant Attorney-General, for appellee.

The testimony shows beyond doubt that the games were run and the necessary means furnished by defendant. Even the lenient state witness, Sam Purser, when asked, "Who managed the games there," answered, "The Colonel (meaning the defendant) did."

It is the object of the statute to make it unlawful to keep just such places and tables as Jones kept, and to avoid the very results and course of conduct in violation of law by persons gathering together around the poker table for the purpose of gambling, as are shown in this case.

This is expressed by Judge Woods in the opinion in *Rawls* v. *State,* 70 Miss., 739. "It was not the purpose of the statute to make criminal the keeping in one's house a gaming table, or the keeping of a gaming table to be played at with cards for amusement only. The object to be accomplished was to prevent all gambling by imposing punishment on those who promoted the same by providing the means for its indulgence."

The pleadings and proof in this case leave no doubt about the correctness of the verdict, and it sanctions a proper enforcement of the letter and purpose of the statute.

WHITFIELD, C. J., delivered the opinion of the court.

The defendant was indicted for three distinct felonies, in three separate counts, in one indictment, under § 1124 of the code of 1892, as amended by the act of 1896, making each of the offenses a felony. The court overruled the motion to compel the district attorney to elect on which count he would try the defendant, and the trial proceeded throughout on all three of the counts. The case was not dismissed as to the second and third counts. The pleadings stood unchanged throughout. It is true that the court, in its first instruction for the state, told the jury that the defendant was being tried for keeping and exhibiting a gambling table, but this statement in the instruction is contradictory of the pleadings and evidence. In the course

of the trial there was evidence, for instance, that the defendant kept and exhibited a gambling table, that he was concerned and interested in the table, and that he managed the table. It would have been very easy to have limited the inquiry before the jury to the first count, by dismissing as to the other two, or electing to try him on the first only; but the motion to compel election was overruled, and the record fails to disclose any dismissal as to the other two counts. Indeed, it shows affirmatively that defendant was tried on all three of the counts, and a general verdict of guilty rendered. Now, the express language of the statute requires that under the second count in the indictment the state must charge and prove that the defendant was interested in the profit or loss of the table. Whatever may be the true view as to whether it is necessary to show this under the first count, it is plain, from the express language of the statute, that it must be shown in order to convict the defendant under the second count. The testimony was in conflict as to whether the defendant was interested in the loss or profit of the table, and yet, under this state of the case, the statute requiring the second count to charge that the defendant was so interested in the profit or loss of the table, and the said second count being properly drawn, and expressly charging, according to the statute, that the defendant was so interested, and the testimony for the state and the defendant being in direct conflict as to whether he was so interested, the court refused nine charges asked for the defendant, the direct purpose of which was to declare to the jury that the defendant could not be convicted unless the evidence showed him to have been so interested in the loss or profit of the table. It is manifest that it was error to refuse these instructions, for the reason that it was the right of the defendant to have them given, as appropriate to the second count. *Non constat* but that the jury found him guilty under the second count alone, even though they might have believed that he was not interested in the loss or profit of the table under the second count. We do not decide whether the

indictment should charge, under the first count, that the defendant·was interested in the loss or profit of the table. We merely decide that since the statute expressly makes it necessary to his conviction under the second count that he should be so interested, and since the testimony was in conflict on that point, the defendant was clearly entitled to instructions telling· the jury that under the second count he could not be convicted unless they believed he was so interested. It was also error to charge the jury, for the state, that defendant could be convicted although he was not so interested, without limiting the right so to convict to the first count, even if the true view be—as to which we do not decide—that it is not necessary under the first count to charge and prove that he was so interested.

*Reversed and remanded.*